ORIGINAL



1  WILLIAM N. LOBEL - State Bar No. 93202
   JEFFREY M. REISNER - State Bar No. 143715
2  TAVI C. FLANAGAN - State Bar No. 169156
   MICHAEL D. GOOD - State Bar No. 176033
3  MIKE D. NEUE - State Bar No. 179303
   THE LOBEL FIRM
4  A Limited Liability Partnership
   19800 MacArthur Boulevard, Suite 1100
5  Irvine, California 92612-2425

6  Telephone: (949) 476-7400
   Facsimile: (949) 476-7444
7
   [Proposed] Attorneys for Debtor
8  and Debtor-in-Possession

9

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. SA 00-12370 LR |
| FIRST ALLIANCE MORTGAGE COMPANY, a California corporation, | Chapter 11 Proceeding |
| | **JOINT EMERGENCY MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF RELATED CASES PURSUANT TO BANKRUPTCY RULE 1015(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF FRANCISCO NEBOT IN SUPPORT THEREOF** |
| Debtor and Debtor-in-Possession. | |
| | [Identical Motion filed in related Chapter 11 cases of: First Alliance Corporation, a Delaware corporation; First Alliance Mortgage Company, a Minnesota corporation; and First Alliance Portfolio Services, Inc., a Nevada corporation] |

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 476-7400

::ODMA\PCDOCS\LOFDOCS\63368\1



1  TO THE HONORABLE LYNNE RIDDLE, UNITED STATES BANKRUPTCY JUDGE, THE

2  OFFICE OF THE UNITED STATES TRUSTEE, SECURED CLAIMANTS, THE

3  CLAIMANTS HOLDING THE TWENTY LARGEST GENERAL UNSECURED CLAIMS,

4  AND ANY PARTY REQUESTING SPECIAL NOTICE:

5      First Alliance Mortgage Company, a California corporation ("FAMCO California"), First

6  Alliance Mortgage Company, a Minnesota corporation ("FAMCO Minnesota"), First Alliance

7  Corporation, a Delaware corporation ("FACO"), and First Alliance Portfolio Services, Inc., a Nevada

8  corporation ("FAPS"), the debtors and debtors-in-possession in this and other related Chapter 11

9  cases (collectively, the "Related Debtors"), hereby move this Court, pursuant to Rule 1015(b) of the

10  Federal Rules of Bankruptcy Procedure, for an order authorizing joint administration of their Chapter

11  11 cases, all of which are pending in the United States Bankruptcy Court for the Central District of

12  California.[1]

13      The Related Debtors request joint administration of their cases with respect to administrative

14  matters only, including: (i) a joint pleadings docket (excluding, subject to further order of the Court,

15  the listing of filed claims); (ii) a joint pleadings caption; and (iii) combined notices to creditors.  The

16  Related Debtors do not request substantive consolidation of their cases at this time.

17      This Motion is made and based upon the moving papers, the Memorandum of Points and

18  Authorities and Declaration of Francisco Nebot annexed hereto ("Nebot Declaration"), the record in

19  these cases, including the pleadings and documents filed on behalf of parties, the arguments and

20  representations of counsel, and any oral or documentary evidence presented at the time of the hearing

21  on this Motion.

22      The grounds for the relief requested by the Motion are as follows:

23      1.    The Related Debtors have been primarily engaged in mortgage loan origination and

24            loan servicing for over 25 years.  Specifically,

25            •    FAMCO California engaged in the business of loan origination and servicing

26                 operations through its retail branch offices located in eighteen (18) states and

27

28  [1]    For the ease of the Court, the Related Debtors have filed this Motion jointly.  An identical Motion has been filed
in each of the Related Debtors' cases.

::ODMA\PCDOCS\LOFDOCS\63368\1

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

THE LOBEL FIRM LLP
19900 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

1  the District of Columbia. These loans typically consisted of so-called "sub-

2  prime" fixed and adjustable rate loans secured by first mortgages on single

3  family residences. Periodically, after certain loans were generated, FAMCO

4  California would securitize a pool of loans using a REMIC (Real Estate

5  Mortgage Investment Conduit) trust or sell the loans to wholesale purchasers.

6  A significant portion of FAMCO California's loans were securitized with

7  FAMCO California retaining the right to service the loans, and to collect

8  payments for the "owner" of the notes in exchange for a fee. Although

9  FAMCO California has discontinued its loan origination business, it anticipates

10  the continuation, at least in the short term, of its loan servicing operations.

11  • FAPS has acted as a recipient for Residual Interest Differential income

12  otherwise due to FAMCO California from loans assigned to a REMIC trust.[2]

13  Specifically, FAMCO California has assigned its right to receive the Residual

---

[2]  In simplified terms, Residual Interest Differential income is the income derived from the difference between (i) the interest payable by borrowers in a pool of loans assigned to the REMIC trust, and (ii) the yield owed by the REMIC trust to holders of asset-backed security bonds and the servicing fees associated with the pool of loans. Residual Interest Income arises from the differing levels of risk that inure at different points in the securitization process. That process, and the generation of Residual Interest Income, works in the following manner:

When the loans originated by FAMCO California are pooled and assigned to a REMIC trust, asset backed security bonds (i.e., certificated interests in the REMIC trust) are issued and sold by the REMIC trust to the public. Because of the fact that the risk associated with a pool of real estate mortgages is lower than the risk associated with the individual mortgages held in the pool, that lower risk, combined with (i) an overcollateralization factor maintained in the REMIC trust (typically 3%), and (ii) the maintenance of third-party insurance in connection with the pooled loans, results in a lower yield demanded by and paid to the holders of the certificated interests in the REMIC trust (i.e., the holders of asset-backed security bonds). As a result, the yield paid <u>by</u> the REMIC trust to holders of asset-backed security bonds (combined with the servicing fees owed by the REMIC trust), is lower than the rate of interest payable <u>to</u> the REMIC trust by the individual borrowers making payments in connection with the mortgages held in the pool. This difference comprises the Interest Rate Differential.

As a concrete example, if a pool of loans with an average interest rate of ten percent (10%) *per annum* was placed into a REMIC trust along with the appropriate overcollateralization (typically 3%), and the loans were insured, the yield payable by the REMIC to holders of the asset backed security bonds in the REMIC trust may be several points lower than the interest payable to the REMIC by the individual borrowers. For purposes of illustration, if the individual borrowers are paying ten percent (10%) *per annum*, the servicer (FAMCO California) receives a 0.5% fee (computed on an annual basis, and billed monthly), and holders of asset-backed securities receive a yield of six and one-half percent (6.5%) based on the aggregate risk of the loan portfolio, the difference between interest paid <u>to</u> the REMIC trust by individual borrowers in the pool of loans (10%), and interest paid <u>by</u> the REMIC trust to holders of securities (6.5%), combined with servicing fees on the loan portfolio (0.5%) is three percent (3%). It is this difference which comprises the Interest Rate Differential.

::ODMA\PCDOCS\LOFDOCS\63368\1

Interest Differential from numerous REMIC trust transactions to FAPS. The primary reason for the creation of a separate entity to collect the Residual Interest Differential was to obtain the income tax benefits appurtenant to Nevada-based businesses. Prepetition, funds received by FAPS in connection with Residential Interest Differential payments were provided to FACO for distribution to FAMCO California, FACO, and First Alliance Services ("FAS") (a wholly owned subsidiary of FACO and a non-debtor entity)[3] as necessary to pay operating expenses of the members thereof. FAPS is 100% owned by FAMCO California, which also has 100% ownership of FAMCO Minnesota (see discussion below).

- FACO is a publicly traded holding company and corporate parent of FAMCO California. FACO holds 100% of the stock of FAMCO California, and of FAS.

- FAMCO Minnesota, like FAPS, is a wholly-owned subsidiary of FAMCO California. FAMCO Minnesota was established for the purpose of complying with Minnesota law, which requires that mortgage lenders operating in the state of Minnesota must be incorporated in the state of Minnesota. As of the date of the filing of its Chapter 11 petition, FAMCO Minnesota had discontinued its operations in Minnesota and had no employees.

A chart setting forth the organizational structure of the Related Debtors is attached as Exhibit "1" to the Nebot Declaration.

2.    There is substantial overlap with respect to the creditors of the Related Debtors since many obligations and expenses are allocated, as appropriate, among the Related Debtors. In light of this overlap, the Related Debtors believe that joint administration will avoid otherwise unnecessary and expensive duplication of effort and papers caused by preparing and serving the same creditors and

---

[3]    FAS was created for the specific purpose of reducing the net cost associated with the Related Debtors' banking needs. Because of certain banking regulations, the Related Debtors were required to create a separate entity with its own employees which would provide services that could be considered "banking related." In addition to providing banking-related services which directly and exclusively benefit FAMCO California, FAS provides payroll and accounting services to FAMCO California. FAMCO California pays FAS for the services rendered to FAMCO California in the ordinary course of business.

::ODMA\PCDOCS\LOFDOCS\63368\1

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

interest holders with multiple sets of differently captioned but otherwise identical papers. Moreover, it is virtually certain that numerous motions filed in the Related Debtors' cases will concern two or more of the Related Debtors, and many will affect all of the Related Debtors. Again, the Related Debtors believe that joint administration will avoid unnecessary and expensive duplication of effort and papers caused by preparing the same motion with different captions.

3.    By jointly administering the Related Debtors' estates, creditors and interest holders will receive appropriate notice of matters involving all of the Related Debtors, thereby ensuring that creditors and interest holders are fully informed of matters potentially affecting their claims. In short, joint administration of the Related Debtors' cases, including (i) the use of a single pleadings docket, (ii) the combining of notices to creditors and interest holders of the different estates, and (iii) the joint handling of other purely administrative matters will aid in expediting the cases and rendering the process substantially less costly, without prejudicing the substantive rights of any creditor or interest holder.

4.    The Related Debtors propose that all pleadings relating to any or all of the Related Debtors' cases shall contain a joint caption in substantially the form attached as Exhibit "2" to the Nebot Declaration, and that all such pleadings shall be filed and maintained under the existing docket for FAMCO California. However, each pleading filed will indicate either (i) that all the Related Debtors are parties to or are affected by the pleading, or (ii) if only certain of the Related Debtors are involved, which of the Related Debtors are parties to or are affected by the pleading.

5.    Nothing contained in this Motion is intended to compel substantive consolidation of the Related Debtors' respective estates. Since the Related Debtors request only joint administration by this Motion, no substantive rights will be prejudiced by the relief requested herein, and no conflicts will result therefrom. In the event substantive consolidation of the Related Debtors' estates is warranted, the Related Debtors will bring a separate motion requesting such relief.

6.    The Court may schedule a hearing on the Motion within forty-eight (48) hours of the filing of the Motion. Concurrently with the filing of this Motion, the Related Debtors, via overnight delivery, served this Motion on the following parties: (1) the Office of the United States Trustee; (2) each of the Related Debtors' twenty (20) largest general unsecured creditors; (3) all secured

::ODMA\PCDOCS\LOFDOCS\63368\1

THE LOBEL FIRM LLP
19900 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

1    creditors; and (4) any party requesting special notice. After obtaining a hearing date on this Motion,

2    the Related Debtors will serve a notice of the hearing on this Motion, via overnight delivery, on the

3    above-referenced parties.

4        **WHEREFORE**, the Related Debtors request that the Court enter an order:

5        a.      Granting this Motion;

6        b.      Directing the joint administration of the Related Debtors' Chapter 11 cases; and

7        c.      For such other and further relief as this Court deems just and proper.

8    DATED: April 3, 2000                     THE LOBEL FIRM LLP

9

10                                    By: _____
                                            William N. Lobel
11                                          Jeffrey M. Reisner
                                            Tavi C. Flanagan
12                                          Michael D. Good
                                            Mike D. Neue
13                                          [Proposed] Attorneys for Debtor and Debtor-in-
                                            Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

::ODMA\PCDOCS\LOFDOCS\63368\1

6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

For purposes of brevity, the Related Debtors hereby incorporate by reference those facts set forth in the Motion and in the accompanying Nebot Declaration.

## II.

## JOINT ADMINISTRATION OF THE RELATED DEBTORS' CASES
## WOULD YIELD SUBSTANTIAL ADMINISTRATIVE BENEFITS

Although the Bankruptcy Code specifically provides for joint administration of limited types of cases (See 11 U.S.C. § 302(a) (permitting the filing of joint petitions by spouses)), there is no provision in the Code governing joint administration of cases generally. Bankruptcy Rule 1015(b), however, makes clear that joint administration may be appropriate when two or more related debtor entities, whether spouses, partnerships, or corporations, have filed for protection under the Code. Bankruptcy Rule 1015 provides, inter alia,:

> (b) Cases Involving Two or More Related Debtors. If a joint petition or two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates . . .

> * * *

> (c) Expediting and Protective Orders. When an order for . . . joint administration of a joint case or two or more cases is entered pursuant to this rule, while protecting the rights of the parties under the Code, the court may enter orders as may tend to avoid unnecessary costs and delay.

Fed. R. Bankr. Proc. 1015(b) and (c) (2000).

Bankruptcy Rule 1015 promotes the fair and efficient administration of related cases of affiliated debtors, while ensuring that no rights of individual creditors are unduly prejudiced. See 8 Collier on Bankruptcy, ¶ 1015.05 (15th ed. 1990); See also In re Brookhollow Assocs., 435 F.

::ODMA\PCDOCS\LOFDOCS\63365\1

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 476-7400

1    Supp. 763, 766 (D. Mass. 1977) (joint administration "help[s] the bankruptcy court to administer

2    economically and efficiently different estates with substantial interests in common"), aff'd, 575 F.2d

3    1003 (1st Cir. 1978); In re N.S. Garrott & Sons, 63 B.R. 189, 191 (Bankr. E.D. Ark. 1986); In re H &

4    S Transportation Co., 55 B.R. 786, 791 (Bankr. M.D. Tenn. 1985).  As set forth in the official

5    Advisory Committee Note to Rule 1015:

6              Joint administration as distinguished from consolidation may include

7              combining the estates by using a single docket for the matters occurring

8              in the administration, including the listing of filed claims, the combining

9              of notices to creditors of the different estates, and the joint handling of

10             other purely administrative matters that may aid in expediting the cases

11             and rendering the process less costly.

12    Joint administration differs significantly from substantive consolidation, in which the assets

13    and liabilities are pooled and, generally, the creditors of the separate entities share pro rata in the

14    aggregate net value of the estates.  See In re Standard Brands Paint Co., 154 B.R. 563 (Bankr. C.D.

15    Cal. 1993); In re I.R.C.C., Inc., 105 B.R. 237, 241 (Bankr. S.D.N.Y. 1989).  Joint administration, by

16    contrast, is merely procedural, and has no impact on the substantive rights of creditors.  Garrott, 63

17    B.R. at 191; In re Arnold, 33 B.R. 765, 767 (Bankr. E.D.N.Y. 1983).  Thus, joint administration does

18    not in itself prejudice the rights of any creditor.

19    Joint administration is warranted in the Related Debtors' cases.  As set forth at Exhibit "1," all

20    of the Related Debtors have been part of a common enterprise – the origination and servicing of

21    mortgage loans.  Based on these relationships and the integration of operations and centralization of

22    management, the Related Debtors plainly are "related" and are "affiliate[s]" as those terms are used in

23    the Bankruptcy Code.  See 11 U.S.C. § 101(2).  Moreover, the Related Debtors have not operated as

24    stand-alone businesses, but rather as an integrated enterprise, and each Related Debtor has been

25    dependent upon the other for its day-to-day operations.

26    Joint administration will greatly reduce the costs of administering the Related Debtors' cases

27    and will serve to eliminate the inefficiency created by maintaining numerous separate dockets.  To a

28    great extent, for each set of pleadings to be filed in the Related Debtors' cases, the only material

::ODMA\PCDOCS\LOFDOCS\63368\1

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

8

1   differences between each pleading will be in the captions; since substantive matters affecting one

2   estate typically will affect other or all estates.  Without the cost benefits associated with joint

3   administration, separate pleadings must be filed in each matter, and an enormous amount of

4   unnecessary copying will need to be done at substantial cost to the estates -- all without any additional

5   benefit to creditors or interest holders.  Moreover, such unnecessary duplication would severely tax the

6   administrative facilities of the Related Debtors and their attorneys, diverting valuable resources away

7   from addressing substantive issues, including the orderly wind-down of the Related Debtors'

8   businesses and the formulation of plan(s) of reorganization.  Additionally, the filing of separate

9   pleadings in each of the Related Debtors' cases undoubtedly would create a significant burden for the

10   Bankruptcy Clerk's Office, which must process and store the literally thousands of pages of pleadings

11   that may be filed in these cases.

12        Moreover, there is substantial overlap between the Related Debtors' creditors and interest

13   holders.  If the Related Debtors' cases were administered separately, the Related Debtors would be

14   unnecessarily burdened with providing creditors and interest holders with multiple copies of the same

15   notice of important events in their cases.  Such redundancy and unnecessary duplication would not

16   only be costly to the estates but would create no counterbalancing benefit for the respective creditors

17   or interest holders.

18        The burden of separate administration would be similarly felt by the Related Debtors' creditors

19   and interest holders.  As with the Related Debtors, if the cases are not administratively consolidated,

20   creditors and interest holders will also be required to file multiple copies of pleadings which pertain to

21   more than one Related Debtor in each of the cases for no reason other than to maintain separate

22   dockets and files.  Moreover, by maintaining separate cases, some creditors and interest holders may

23   be confused unnecessarily.  By jointly administering the estates, creditors and interest holders will

24   receive notice of matters involving all Related Debtors, thereby ensuring that they are fully informed

25   of matters potentially affecting their claims.

26

27

28

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

::ODMA\PCDOCS\LOFDOCS\63368\1

9

# III.

## THERE ARE NO ACTUAL CONFLICTS OF INTEREST BETWEEN

## THE RELATED DEBTORS AND, THEREFORE, NO CREDITORS OR

## INTEREST HOLDERS WILL BE PREJUDICED BY JOINT ADMINISTRATION

There would be no material prejudice to creditors or interest holders were the Related Debtors' estates to be jointly administered.  Indeed, as discussed above, joint administration would benefit all creditors and interest holders by substantially reducing costs and administrative burdens in general. As for the possibility of conflicts of interest, it is highly unlikely that any conflicts exist which would prejudice the creditors or interest holders of any of the Related Debtors' estates.  As discussed above, in certain respects the Related Debtors have operated as an integrated enterprise.  In order to effect the orderly liquidation contemplated by each of the Related Debtors, continued cooperation between the Related Debtors is essential.

There may exist certain intercompany claims between the Related Debtors.  For the most part, however, these intercompany claims are undisputed, fixed, matured, or liquidated.  Thus, there can be no real "dispute" between the Related Debtors regarding these claims.  See In re O'Connor, 52 B.R. 892, 896 (Bankr. W.D. Okla. 1985) (considering possibility of conflicts in the context of joint representation of professionals).  Moreover, it is well-established that intercompany claims are not sufficient in themselves to preclude joint representation by a single professional; Courts have repeatedly held that there is no per se rule against representation of multiple entities who may have claims against each other.  See In re BH & P Inc., 949 F.2d 1300, 1315-16 (3d Cir. 1991) (holding that courts must take a "flexible" approach in considering employment of professionals and that "the existence of interdebtor claims is . . . no longer an automatic ground for disqualification of counsel . . . ."); In re International Oil Co., 427 F.2d 186, 187 (2d Cir. 1970) (existence of intercompany claims was not "sufficient to saddle . . . estates [of four affiliated corporations] with the expense of separate [counsel]"); In re Roberts, 75 B.R. 402, 405-06 (D. Utah 1987); In re Global Marine, Inc., 108 B.R. 998, 1004 (Bankr. S.D. Tex. 1989); In re Star Broadcasting, 81 B.R. 835, 844 (Bankr. D.N.J. 1988).  If the existence of certain intercompany claims would not be sufficient to

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

::ODMA\PCDOCS\LOFDOCS\63368\1

1  preclude joint representation by professionals, it certainly should not be sufficient to preclude joint

2  administration under the Court's continued supervision.

3  <center>**IV.**</center>

4  <center>**WERE AN ACTUAL CONFLICT TO ARISE IN THE COURSE OF THE RELATED**</center>

5  <center>**DEBTORS' CASES, THE COURT MAY ALLEVIATE ANY PREJUDICE TO CREDITORS**</center>

6  <center>**PURSUANT TO ITS DISCRETION UNDER BANKRUPTCY RULE 1015(C)**</center>

7      Although the Related Debtors do not believe that an actual conflict will arise between the

8  various estates, were one to arise in the future the Court could easily alleviate any prejudice it may

9  cause to creditors or interest holders through the Court's broad powers to oversee the joint

10  administration of the Related Debtors' cases. As discussed above, joint administration is a procedural

11  device designed to reduce costs and administrative burdens generally. Were a conflict to arise during

12  the cases, the Court may step in and limit joint administration to the extent necessary to alleviate any

13  negative effects of the conflict. Under Bankruptcy Rule 1015(c), "while protecting the rights of

14  parties under the Code, the court may enter orders as may tend to avoid unnecessary costs and delay."

15  Exercising its discretion under this Rule, the Court would be able to promote the interests of the

16  estates through administrative efficiency, while at the same time protecting the rights of individual

17  creditors and interest holders if and when the need arises. Until an _actual_ conflict arises, however,

18  there is no reason why the Court should not authorize joint administration.

19  <center>**V.**</center>

20  <center>**CONCLUSION**</center>

21      The primary goal of a Chapter 11 reorganization is to maximize the value of a debtor's estate

22  for the benefit of creditor and equity constituencies. Related to that goal, and of significant

23  importance as well, is the efficient administration of the bankruptcy case so that the debtor can emerge

24  quickly and begin distributions to creditors. Both of these goals will be furthered by permitting the

25  joint administration of the Related Debtors' cases.

26      Based upon the foregoing arguments and authorities and the evidence before this Court, the

27  Related Debtors respectfully submit that the Court should enter an order:

28      a.    Granting this Motion;

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 476-7400

::ODMA\PCDOCS\LOFDOCS\63368\1

b.    Directing the joint administration of the Related Debtors' Chapter 11 cases; and

c.    For such other and further relief as this Court deems just and proper.

DATED: April 3, 2000                    THE LOBEL FIRM LLP

By: _____

William N. Lobel
Jeffrey M. Reisner
Tavi C. Flanagan
Michael D. Good
Mike D. Neue
[Proposed] Attorneys for Debtor and Debtor-in-Possession

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

::ODMA\PCDOCS\LOFDOCS\63358\1

# DECLARATION OF FRANCISCO NEBOT

I, Francisco Nebot, hereby declare and state as follows:

1.      I am the President and Chief Financial Officer of First Alliance Mortgage Company, a California corporation ("FAMCO California"), First Alliance Mortgage Company, a Minnesota corporation ("FAMCO Minnesota"), First Alliance Corporation, a Delaware corporation ("FACO"), and First Alliance Portfolio Services, Inc., a Nevada corporation ("FAPS"), the debtors and debtors-in-possession in this and other related Chapter 11 cases (collectively, the "Related Debtors"), and I am authorized to give this declaration on behalf of the Related Debtors.  The matters stated herein are within my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.      In each of the above-referenced capacities, my primary responsibilities are to oversee the day-to-day operations of the Related Debtors' businesses, to coordinate those operations in compliance with the requirements for operating as debtors-in-possession and to create strategies and engage in negotiations with respect to the formulation of a Chapter 11 plan of reorganization in each of the Related Debtors' cases.  This declaration is given in support of the Related Debtors' Joint Emergency Motion for Order Authorizing Joint Administration of Related Cases Pursuant to Bankruptcy Rule 1015(b).

3.      The Related Debtors have been primarily engaged in mortgage loan origination and loan servicing for over 25 years.  Specifically,

- FAMCO California engaged in the business of loan origination and servicing operations through its retail branch offices located in eighteen (18) states and the District of Columbia.  These loans typically consisted of so-called "sub-prime" fixed and adjustable rate loans secured by first mortgages on single family residences.  Periodically, after certain loans were generated, FAMCO California would securitize a pool of loans using a REMIC (Real Estate Mortgage Investment Conduit) trust or sell the loans to wholesale purchasers.  A significant portion of FAMCO California's loans were securitized with FAMCO California retaining the right to service the loans, and to collect

::ODMA\PCDOCS\LOFDOCS\63368\1

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 476-7400

1    payments for the "owner" of the notes in exchange for a fee.  Although

2    FAMCO California has discontinued its loan origination business, it anticipates

3    the continuation, at least in the short term, of its loan servicing operations.

4    •    FAPS has acted as a recipient for Residual Interest Differential income

5    otherwise due to FAMCO California from loans assigned to a REMIC trust.  In

6    simplified terms, Residual Interest Differential income is the income derived

7    from the difference between (i) the interest payable by borrowers in a pool of

8    loans assigned to the REMIC trust, and (ii) the yield owed by the REMIC trust

9    to holders of asset-backed security bonds and the servicing fees associated with

10    the pool of loans.  Residual Interest Income arises from the differing levels of

11    risk that inure at different points in the securitization process.  That process, and

12    the generation of Residual Interest Income, works in the following manner:

13    When the loans originated by FAMCO California are pooled and assigned to a

14    REMIC trust, asset backed security bonds (i.e., certificated interests in the

15    REMIC trust) are issued and sold by the REMIC trust to the public.  Because of

16    the fact that the risk associated with a pool of real estate mortgages is lower

17    than the risk associated with the individual mortgages held in the pool, that

18    lower risk, combined with (i) an  overcollateralization factor maintained in the

19    REMIC trust (typically 3%), and (ii) the maintenance of third-party insurance in

20    connection with the pooled loans, results in a lower yield demanded by and paid

21    to the holders of the certificated interests in the REMIC trust (i.e., the holders of

22    asset-backed security bonds).  As a result, the yield paid <u>by</u> the REMIC trust to

23    holders of asset-backed security bonds (combined with the servicing fees owed

24    by the REMIC trust), is lower than the rate of interest payable <u>to</u> the REMIC

25    trust by the individual borrowers making payments in connection with the

26    mortgages held in the pool.  This difference comprises the Interest Rate

27    Differential.

28

::ODMA\PCDOCS\LOFDOCS\63368\1

14

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 476-7400

As a concrete example, if a pool of loans with an average interest rate of ten percent (10%) *per annum* was placed into a REMIC trust along with the appropriate overcollateralization (typically 3%), and the loans were insured, the yield payable by the REMIC to holders of the asset backed security bonds in the REMIC trust may be several points lower than the interest payable to the REMIC by the individual borrowers. For purposes of illustration, if the individual borrowers are paying ten percent (10%) *per annum*, the servicer (FAMCO California) receives a 0.5% fee (computed on an annual basis, and billed monthly), and holders of asset-backed securities receive a yield of six and one-half percent (6.5%) based on the aggregate risk of the loan portfolio, the difference between interest paid <u>to</u> the REMIC trust by individual borrowers in the pool of loans (10%), and interest paid <u>by</u> the REMIC trust to holders of securities (6.5%), combined with servicing fees on the loan portfolio (0.5%) is three percent (3%). It is this difference which comprises the Interest Rate Differential. Specifically, FAMCO California has assigned its right to receive the Residual Interest Differential from numerous REMIC trust transactions to FAPS. The primary reason for the creation of a separate entity to collect the Residual Interest Differential was to obtain the income tax benefits appurtenant to Nevada-based businesses. Prepetition, funds received by FAPS in connection with Residential Interest Differential payments were provided to FACO for distribution to FAMCO California, FACO, and First Alliance Services ("FAS") (a wholly owned subsidiary of FACO and a non-debtor entity)[4] as necessary to pay operating expenses of the members thereof. FAPS is 100% owned by

---

[4]    FAS was created for the specific purpose of reducing the net cost associated with the Related Debtors' banking needs. Because of certain banking regulations, the Related Debtors were required to create a separate entity with its own employees which would provide services that could be considered "banking related." In addition to providing banking-related services which directly and exclusively benefit FAMCO California, FAS provides payroll and accounting services to FAMCO California. FAMCO California pays FAS for the services rendered to FAMCO California in the ordinary course of business.

::ODMA\PCDOCS\LOFDOCS\63368\1

1    FAMCO California, which also has 100% ownership of FAMCO Minnesota

2    (see discussion below).

3    •    FACO is a publicly traded holding company and corporate parent of FAMCO

4    California. FACO holds 100% of the stock of FAMCO California, and of FAS.

5    •    FAMCO Minnesota, like FAPS, is a wholly-owned subsidiary of FAMCO

6    California. FAMCO Minnesota was established for the purpose of complying

7    with Minnesota law, which requires that mortgage lenders operating in the state

8    of Minnesota must be incorporated in the state of Minnesota. As of the date of

9    the filing of its Chapter 11 petition, FAMCO Minnesota had discontinued its

10    operations in Minnesota and had no employees.

11    A chart setting forth the organizational structure of the Related Debtors is attached as Exhibit

12    "1" hereto.

13    4.    There is substantial overlap with respect to the creditors of the Related Debtors since

14    many obligations and expenses are allocated, as appropriate, among the Related Debtors. In light of

15    this overlap, the Related Debtors believe that joint administration will avoid otherwise unnecessary

16    and expensive duplication of effort and papers caused by preparing and serving the same creditors and

17    interest holders with multiple sets of differently captioned but otherwise identical papers. Moreover, it

18    is virtually certain that numerous motions filed in the Related Debtors' cases will concern two or more

19    of the Related Debtors, and many will affect all of the Related Debtors. Again, the Related Debtors

20    believe that joint administration will avoid unnecessary and expensive duplication of effort and papers

21    caused by preparing the same motion with different captions.

22    5.    By jointly administering the Related Debtors' estates, creditors and interest holders will

23    receive appropriate notice of matters involving all of the Related Debtors, thereby ensuring that

24    creditors and interest holders are fully informed of matters potentially affecting their claims. In short,

25    joint administration of the Related Debtors' cases, including (i) the use of a single pleadings docket,

26    (ii) the combining of notices to creditors and interest holders of the different estates, and (iii) the joint

27    handling of other purely administrative matters will aid in expediting the cases and rendering the

28

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 476-7400

::ODMA\PCDOCS\LOFDOCS\63368\1

1    process substantially less costly, without prejudicing the substantive rights of any creditor or interest

2    holder.

3         6.      The Related Debtors propose that all pleadings relating to any or all of the Related

4    Debtors' cases shall contain a joint caption in substantially the form attached as Exhibit "2" to the

5    Nebot Declaration, and that all such pleadings shall be filed and maintained under the existing docket

6    for FAMCO California.  However, each pleading filed will indicate either (i) that all the Related

7    Debtors are parties to or are affected by the pleading, or (ii) if only certain of the Related Debtors are

8    involved, which of the Related Debtors are parties to or are affected by the pleading.

9         7.      Nothing contained in this Motion is intended to compel substantive consolidation of the

10   Related Debtors' respective estates.  Since the Related Debtors request only joint administration by

11   this Motion, no substantive rights will be prejudiced by the relief requested herein, and no conflicts

12   will result therefrom.  In the event substantive consolidation of the Related Debtors' estates is

13   warranted, the Related Debtors will bring a separate motion requesting such relief.

14        8.      Joint administration clearly is warranted in the Related Debtors' cases.  As set forth on

15   Exhibit "1," all of the Related Debtors have common ultimate ownership.  Based on these

16   relationships and the substantial integration of operations and centralization of management, I have

17   been advised that the Related Debtors are "related" and are "affiliate[s]" as those terms are used in the

18   Bankruptcy Code.  Moreover, the Related Debtors do not operate as stand-alone businesses, but rather

19   as an integrated enterprise, and each Related Debtor is dependent upon the others for its day-to-day

20   operations.

21        9.      The Related Debtors believe that joint administration will greatly reduce the costs of

22   administering the Related Debtors' cases and would serve to eliminate the inefficiency created by

23   maintaining numerous separate dockets.  To a great extent, for each set of pleadings to be filed in the

24   Related Debtors' cases, the only material differences between each pleading will be in the captions;

25   since substantive matters affecting one estate typically will affect other or all estates.  By requiring

26   separate pleadings to be filed in each matter, an enormous amount of copying will need to be done at

27   substantial cost to the estates without any additional benefit to creditors or interest holders.  Moreover,

28   such duplication would severely tax the administrative facilities of the Related Debtors and their

::ODMA\PCDOCS\LOFDOCS\63368\1

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

17

1    attorneys, diverting valuable resources away from addressing substantive issues, including the

2    continued operations of the Related Debtors' businesses and the formulation of plan(s) of

3    reorganization. Additionally, the filing of separate pleadings in each of the Related Debtors' cases

4    undoubtedly would create a significant burden for the Bankruptcy Clerk's Office, which must process

5    and store the literally thousands of pages of pleadings that may be filed in these cases.

6        10.    Moreover, there is overlap between the Related Debtors' creditors and interest holders.

7    If the Related Debtors' cases were administered separately, the Related Debtors would be

8    unnecessarily burdened with providing creditors and interest holders with multiple copies of the same

9    notice of important events in their cases. Such redundancy and unnecessary duplication would not

10   only be costly to the estates but would create no counterbalancing benefit for their creditors or interest

11   holders.

12       11.    The burden of separate administration will be similarly felt by the Related Debtors'

13   creditors and interest holders. As with the Related Debtors, if the cases are not administratively

14   consolidated, creditors and interest holders will also be required to file multiple copies of pleadings

15   which pertain to more than one Related Debtor in each of the cases for no reason other than to

16   maintain separate dockets and files. Moreover, by maintaining separate cases, some creditors and

17   interest holders may be confused unnecessarily. By jointly administering the estates, creditors and

18   interest holders will receive notice of matters involving all Related Debtors, thereby insuring that they

19   are fully informed of matters potentially affecting their claims.

20

21

22

23

24

25

26

27

28

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

::ODMA\PCDOCS\LOFDOCS\63368\1

18

12.     There would be no material prejudice to creditors or interest holders were the Related Debtors' estates to be jointly administered.  Indeed, as discussed above, joint administration would benefit all creditors and interest holders by substantially reducing costs and administrative burdens in general.  As for the possibility of conflicts of interest, it seems highly unlikely that any conflicts exist which would prejudice the creditors or interest holders of any of the Related Debtors' estates.  As discussed above, in certain respects the Related Debtors operate as an integrated enterprise.  As presently constituted, it would be difficult, at best, for the Related Debtors to continue to operate without continued cooperation between them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of April, 2000, at _____, California.

/s/
FRANCISCO NEBOT

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

::ODMA\PCDOCS\LOFDOCS\63368\1

12.      There would be no material prejudice to creditors or interest holders were the Related Debtors' estates to be jointly administered. Indeed, as discussed above, joint administration would benefit all creditors and interest holders by substantially reducing costs and administrative burdens in general. As for the possibility of conflicts of interest, it seems highly unlikely that any conflicts exist which would prejudice the creditors or interest holders of any of the Related Debtors' estates. As discussed above, in certain respects the Related Debtors operate as an integrated enterprise. As presently constituted, it would be difficult, at best, for the Related Debtors to continue to operate without continued cooperation between them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___3___ day of April, 2000, at _____, California.

FRANCISCO NEBOT

19



**First Alliance Corporation ("FACO")**
*Ch. 11 Case No. SA 00-12371 LR*
- Publicly traded holding company

100% stock ownership

**First Alliance Mortgage Company ("FAMCO California")**
*Ch. 11 Case No. SA 00-12370 LR*
*Business Function:*
- Loan Origination and Servicing Operations in states other than Minnesota

100% stock ownership

**First Alliance Mortgage Corporation ("FAMCO Minnesota")**
*Ch. 11 Case No. SA 00-12372 LR*
*Business Function:*
- Loan Origination and Servicing Operations in Minnesota

100% stock ownership

**First Alliance Portfolio Services, Inc. ("FAPS")**
*Ch. 11 Case No. SA 00- 12373 LR*
*Business Function:*
- Collects residual interest differential

100% stock ownership

**First Alliance Services, Inc. ("FAS")**
*Not in bankruptcy*
*Business Function:*
- Renders banking-related services, and payroll and accounting services to FAMCO

**Exhibit "1"**

Exhibit _____1_____

Page _____20_____

1  | WILLIAM N. LOBEL - State Bar No. 93202
   | JEFFREY M. REISNER - State Bar No. 143715
2  | TAVI C. FLANAGAN - State Bar No. 169156
   | MICHAEL D. GOOD - State Bar No. 176033
3  | MIKE D. NEUE - State Bar No. 179303
   | THE LOBEL FIRM
4  | A Limited Liability Partnership
   | 19800 MacArthur Boulevard, Suite 1100
5  | Irvine, California 92612-2425

6  | Telephone:  (949) 476-7400
   | Facsimile:  (949) 476-7444
7

8  | UNITED STATES BANKRUPTCY COURT

9  | CENTRAL DISTRICT OF CALIFORNIA

10 | SANTA ANA DIVISION

11 | In re                                             Case No. SA 00-12379 LR

12 | FIRST ALLIANCE MORTGAGE COMPANY,                  Chapter 11 Case
   | a California corporation, et al.,
13 |                                                   (Jointly Administered with
   |          Related Debtors.                         Case No. SA 00- 12371 LR;
14 |                                                   Case No. SA 00- 12372 LR; and
   | _____               Case No. SA 00-12373 LR)
15 | ☐ Affects All Related Debtors.

16 |
   | FIRST ALLIANCE MORTGAGE COMPANY,                  **TITLE OF DOCUMENT**
17 | a California corporation
   | Case No. SA 00-12370 LR
18 | ☐ Affected by this Pleading
   |                                                   DATE:
19 | _____               TIME:
   | FIRST ALLIANCE CORPORATION,                       PLACE:  Courtroom 6D
20 | a Delaware corporation                                    Ronald Reagan Federal Building
   | Case No. SA 00-12371 LR                                   411 West Fourth Street
21 | ☐ Affected by this Pleading                               Santa Ana, California

22 | _____
   | FIRST ALLIANCE MORTGAGE COMPANY,
23 | a Minnesota corporation
   | Case No. SA 00-12372 LR
24 | ☐ Affected by this Pleading

25 | _____
   | FIRST ALLIANCE PORTFOLIO SERVICES,
26 | INC., a Nevada corporation
   | Case No. SA 00-12373 LR
27 | ☐ Affected by this Pleading

28 |

-1-   #63374 v1 - FAMCO/Joint.Caption 04/03/00 12:01 PM

Case No. SA 00-12370 LR
NAME OF PLEADING

Exhibit ___2___

Page ___2|___

1

2  DATED: _____                    THE LOBEL FIRM
                                            A Limited Liability Partnership
3

4                                          By: _____
5                                                William N. Lobel
                                                 Jeffrey M. Reisner
6                                                Tavi C. Flanagan
                                                 Michael D. Good
7                                                Mike D. Neue
                                           Attorneys for Related Debtors
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. SA 00-12370 LR
NAME OF PLEADING                    Exhibit ____ 2 ____

                                   Page ____ 22 ____

<div align="center">

**PROOF OF SERVICE**

</div>

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is The Lobel Firm LLP, 19800 MacArthur Boulevard, Suite 1100, Irvine, California.

On April 3, 2000, I served the foregoing document(s) described as **JOINT EMERGENCY MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF RELATED CASES PURSUANT TO BANKRUPTCY RULE 1015(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF FRANCISCO NEBOT IN SUPPORT THEREOF** on the interested parties in this action addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☒   By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

☒   **BY OVERNIGHT MAIL (CCP §1013(a)&(b)):** I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 19800 MacArthur Boulevard, Suite 1100, Irvine, California, in the ordinary course of business.

☒   **BY FEDERAL EXPRESS (CCP §1013(c)&(d)):** I am readily familiar with the firm's practice of collection and processing items for delivery with Federal Express. Under that practice such envelope(s) is deposited at a facility regularly maintained by Federal Express or delivered to an authorized courier or driver authorized by Federal Express to receive such envelope(s), on the same day this declaration was executed, with delivery fees fully provided for at 19800 MacArthur Boulevard, Suite 1100, Irvine, California, in the ordinary course of business.

Executed on April 3, 2000 at Irvine, California

☐   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒   **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Linda A. Farmer

THE LOBEL FIRM LLP
19800 MACARTHUR BOULEVARD, SUITE 1100
IRVINE, CALIFORNIA 92612-2425
(949) 475-7400

::ODMA\PCDOCS\LOFDOCS\63365\1

First Alliance Mortgage Company, a Ca
Chapter 11 Case No. SA 00-12370 LR

20 LARGEST LIST

Debtor
Francisco Nebot, President
FAMCO entities
17305 Von Karman Avenue
Irvine, CA 92614-6203
FC # 6115 8718 0830

Counsel for the DIP
William N. Lobel, Esq.
Lobel & Opera LLP
19800 MacArthur Blvd
Irvine CA 92612-2425

Arthur Marquis Esq.
Office of the United States Trustee
411 W. Fourth Street, Ste. 9041
Santa Ana, CA 92701-8000
FC # 6115 8718 0829

AdvisEcon Consulting
Attn: President/Credit Manager
1632 N. Randolph St.
Arlington, VA 22207
FC # 6115 8717 9413

American Express
Attn: President/Credit Manager
P.O. Box 0001
Los Angeles, CA 90096
EM # EL46508297I US

Baker & Hostetler, LLP
Attn: President/Credit Manager
303 East 17th Avenue, Ste 1100
Denver, CO 80203
FC # 6115 8717 9490

Birnbaum, Umeda & Alcala
Attn: President/Credit Manager
1733 Woodside Rd, Ste 210
Redwood City, CA 94061
FC # 6115 8717 9799

Brown Rudnick Freed & Gesmer
Attn: Marilyn D. Stempler Esq
One Financial Center
Boston, MA 02111
FC # 6115 8717 9658

Carney Direct Marketing
Attn: President/Credit Manager
15520 Rockfield Blvd., Ste C
Irvine, CA 92618
FC # 6115 8717 9836

Cigna Flood Services
Attn: President/Credit Manager
P.O. Box 18526
Irvine, CA 92623
EM # EL46508295I US

Columbus Newport
Attn: President/Credit Manager
2111 Wilson Blvd., Ste 1200
Arlington, VA 22201
FC # 6115 8717 9814

Daehnke & Cruz
Attn: President/Credit Manager
4 Park Plaza, Ste 1230
Irvine, CA 92614
FC # 6115 8717 9803

Direct List
Attn: President/Credit Manager
P.O. Box 30280
Los Angeles, CA 90030

Hankin & Co.
Attn: President/Credit Manager
13 Corporate Plaza, Ste 210
Newport Beach, CA 92660
FC # 6115 8717 9841

Keesal Young & Logan
Attn: President/Credit Manager
400 Oceangate
P.O. Box 1730
Los Angeles, CA 90801-1730
FC # 6115 8717 9847

MCI Worldcom
Attn: President/Credit Manager
P.O. Box 70928
Chicago, IL 60673
EM # EL46508302I US

Pacific Admail
Attn: President/Credit Manager
1909 S. Susan St.
Santa Ana, CA 92704-3901
FC # 6115 8717 6241

Pacific Bell
Attn: President/Credit Manager
Payment Center
Van Nuys, CA 91388
EM # EL 46508300I US

Shaun P. Martin, Esq.
2115 Edinburg Avenue
Cardiff, CA 92007
FC # 8115 8718 0417

Skadden, Arps, Slate, Meagher
& Flom, LLP
Attn: President/Credit Manager
1440 New York Avenue NW
Washington, DC 20005
FC # 8115 8718 0428

Southern California Edison
Attn: President/Credit Manager
P.O. Box 600
Rosemead, CA 91771
EM # EL46508304I US

Tension Envelope
Attn: President/Credit Manager
P.O. Box 930065
Kansas City, MO 64193
EM # EL46508299I US

Tri-Star Group
Attn: President/Credit Manager
4100 S. W. 28th Way
Ft. Lauderdale, FL 33312
FC # 8115 8717 6080

Counsel for Lehman Bros
Joshua Divack, Esq.
Jeffrey Schwartz
Hahn & Hessen   FC # 8115 8718 084
350 Fifth Avenue
New York NY 10118-0075

Co-Counsel for Lehman Bros
Craig Barbarosh, Esq.
Pillsbury Madison Sutro
650 Town Center Drive, 7th
Costa Mesa CA 92626-7122
FC # 8115 8718 0873

Secured Creditor
Lehman Brothers
Attn: President/Credit Manager
101 Hudson Street
Jersey City, NJ 07302
FC # 8115 8718 0862

Secured Creditor
GMAC
Attn: President/Credit Manager
Commercial Mortgage
PO Box 100116
Pasadena, CA 91189-0116
EM # EL46508298I US

Secured Creditor
GMAC    *F. E. # 8115 8718 0895*
Attn: President/Credit Manager
Commercial Mortgage
55 South Lake Ave #230
Pasadena, CA 91101-2602

Comerica Bank
Attn: Lucy Alfonso    *FE # 8115 8717 9435*
611 Anton Blvd., 2nd Floor
Costa Mesa, CA 92626


Creditor RSN
Fidelity Federal Bank    *FE # 8115 6718 0884*
Attn: David E. Cher, Esq., Sr. Counsel
4565 Colorado Blvd.
Los Angeles, CA 90039


Counsel to Fidelity Federal Bank    RSN
Lance N. Jurich, Esq.
Loeb & Loeb    *FE # 8115 8718 0900*
1000 Wilshire Blvd, Suite 1800
Los Angeles, CA 90017-2475


Mr. Richard Yates    RSN
Lehman Commercial Paper, Inc.
200 Vesey Street
New York, NY 10285
*F. C # 8115 8718 0728*

Direct List
1950 W. Corporate Way
Anaheim, CA 92801
*FC # 8115 8717 9424*


The Ohio National Life Insurance Company
Attn: Morgages and Real Estate
One Financial Way
Cincinnati, OH 45242
*FC # 8115 8717 9700*

GMAC Commercial Mortgage Corporation
Attn: Mark Durovka
150 South Wacker Drive, Ste. 2800
Chicago, IL 60606
*FC # 8115 8717 9880*